IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH LITTLE, as | ) | |
| Administrator of the Estate of | ) | Civil Action No. 2:23-cv-00075 |
| KENNETH VINYARD, | ) | |
| | ) | HONORABLE DAVID S. CERCONE |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CENTER TOWNSHIP, a | ) | |
| municipal corporation, and | ) | |
| JOHN HAWK, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | Electronically Filed. |

UNCONTESTED PETITION TO APPROVE SETTLEMENT AND ALLOCATION

COMES NOW, the Plaintiff, DEBORAH LITTLE, as Administrator of the Estate of

KENNETH VINYARD, by and through her attorneys, LAW OFFICES OF JOEL SANSONE,

JOEL S. SANSONE, ESQUIRE, MASSIMO A. TERZIGNI, ESQUIRE, and ELIZABETH A.

TUTTLE, ESQUIRE,  and, pursuant to 20 Pa.C.S. Section 3323(a), and Local Rule of Civil

Procedure 17, hereby moves this Honorable Court to approve the settlement reached in this case

by the parties, and to approve the allocation of the settlement proceeds between the wrongful

death and survival claims in this action, of which the following is a statement:

1.      On November 6, 2022, Kenneth Vinyard was present in the parking lot of the Walmart

located in Center Township, Beaver County, Pennsylvania, where a shooting occurred between

two (2) other individuals.  At that time, Mr. Vinyard made efforts to identify the shooter, and to

provide that information to police officers at the scene.  In addition, Mr. Vinyard and his fiancé,

Marcy Beatty ("Beatty"), were attempting to render aid to the victim of the aforementioned

shooting.

2.     At that time, Defendant Hawk appeared at the scene. Defendant Hawk was, at the time of

the incident in question, a police officer employed by the Center Township Police Department.

At the time and place of this incident, Defendant Hawk was off duty, but assumed the role of an

active police officer when he arrived at the scene, and began performing various police duties at

the scene.

3.     As Ms. Beatty was continuing to render aid to the victim, Mr. Vinyard was approached

by Defendant Hawk.  At all times relevant to this incident, Mr. Vinyard was acting in a

peaceable, lawful and proper manner.

4.     The Plaintiff contends that when Defendant Hawk approached Mr. Vinyard, he attacked

Mr. Vinyard without lawful justification or excuse.  The Plaintiff further contends that Defendant

Hawk grabbed Mr. Vinyard by the throat, while simultaneously sweeping his legs out from under

him.  Mr. Vinyard fell backward, and his head violently impacted the pavement of the Walmart

parking lot.

5.     Mr. Vinyard died shortly thereafter as a result of his injuries.

6.     The Plaintiff asserts that the actions of Defendant Hawk, including the violent use of

excessive force on the person of Mr. Vinyard, was without any justification whatsoever,

constituted a violation of Mr. Vinyard's right under the Fourth Amendment to the United States

Constitution to be free from excessive force by a police officer.[1]

---

[1] The incident described herein has been captured by a body camera worn by an on-duty Center
Township police officer.  Although the footage is subject to a confidentiality agreement between
the parties, the Plaintiff will, after an appropriate motion to this Court, deliver a copy of the
video to the Clerk of Courts to be filed under seal, with the understanding that the Court and
Court personnel will keep the video confidential until advised otherwise by the parties.  The
Plaintiff has provided the Court with this video in order that the Court may assess the liability of
Defendant Hawk in this matter.

7.      On or about January 12, 2023, the Plaintiff, as Administrator of the Estate of Kenneth

Vinyard, filed this action against Defendants Hawk and Center Township.  Plaintiff's claims

against Defendant Hawk include claims of wrongful death, survival, excessive force, assault and

battery, gross negligence and intentional infliction of emotional distress.  Plaintiff's claims

against Defendant Center Township include a claim of *Monell* liability.  Undersigned counsel

had earlier filed an action in the Court of Common Pleas of Beaver County on behalf of Marcy

Beatty, Mr. Vinyard's fiancé, against Defendant Hawk, in order to pursue a claim for negligent

infliction of emotional distress on the theory of bystander liability, inasmuch as Ms. Beatty

witnessed the aforementioned attack on Mr. Vinyard, and attempted to render first aid to him.[2]

8.      After extensive investigation, numerous meetings with the parties and defense counsel, as

well as a related Court appearance, informal discovery and two mediations, the parties arrived at

a proposed settlement of this action, as well as the state court action on behalf of Ms. Beatty

described above.  Negotiations during the mediation process were carried out at arm's length,

and all parties negotiated this settlement in good faith.  The Plaintiff believes that this amount is

fair and reasonable for the reasons set forth below.

9.      With respect to this settlement, Defendant Center Township carries liability insurance in

an aggregate amount of One Million ($1,000,000) Dollars for all claims lodged against the

Township, and/or one of its employees (including police officers like Defendant Hawk) during

any policy year.  The policy year for the policy in question commenced on October 1, 2022.  The

---

[2] Although undersigned counsel does not believe that the representation of the two Plaintiffs
described above constitutes a conflict of interests, out of an abundance of caution, counsel has
obtained written conflict waivers from both Plaintiffs.  Counsel will provide those to the Court
for *in camera* inspection at the Court's request.

parties agreed that the Plaintiff would resolve the estate's claim for the sum of Nine Hundred
Fifty Thousand ($950,000) Dollars. [3]

10.      The Plaintiff believes that the settlement proceeds of Nine Hundred Fifty Thousand
($950,000) Dollars should be allocated Sixty (60 %) Percent (*i.e.* Five Hundred Seventy
Thousand ($570,000) Dollars) to the survival action, and Forty (40 %) Percent (*i.e.* Three
Hundred Eighty Thousand ($380,000) Dollars) to the wrongful death claim.  The Plaintiff has
submitted this proposed allocation to the Pennsylvania Department of Revenue for approval.

11.      Plaintiff has been advised that the two actions described in this petition represent the first
actions filed against the aforementioned coverage during the current fiscal year, so that the entire
amount of coverage is available to resolve those two claims.

12.       The insurance policy contains exclusions of coverage for criminal and intentional acts.
Accordingly, Plaintiff is presented with the risk that, if Defendant Hawk were to be charged
criminally and were to either plead guilty or to be found guilty after trial, the insurance company
providing the coverage would no longer indemnify Defendant Hawk.  Although Plaintiff's
position is that the settlement amount in this case is less than adequate considering the damages
to Mr. Vinyard and his family, there is a significant risk that Defendant Hawk will be charged,
thereby triggering an exclusion and potentially eliminating any guaranteed payments to the estate
and its heirs from insurance funds.  The Plaintiff would be left to attempt to execute on any
available assets of the Township to satisfy any verdict obtained in this matter.  During settlement
negotiations, Defendant Center Township's counsel informed the Plaintiff that the Township has

---

[3] The other Fifty Thousand ($50,000) Dollars of available insurance funds is to be paid to Mr.
Vinyard's fiancée, Marcy Beatty, in satisfaction of her bystander liability claim, based upon the
settlement that was negotiated for her in this matter. A copy of the joint settlement agreement is
attached hereto as Exhibit "A."

no available assets with which to satisfy any judgment obtained in this matter.  For these reasons, the Plaintiff agreed to the settlement amount described herein.

13.     The Plaintiff believes that liability evidence against Defendant Hawk is strong, primarily by virtue of the aforementioned body camera footage, which Plaintiff believes speaks for itself. In addition to the video evidence, counsel has interviewed a number of eyewitnesses to the incident who would give strong corroboration to the images caught on camera.

14.     Liability evidence against the municipality is somewhat more problematic.  Through informal discovery, counsel has been informed by counsel for the Township that no evidence exists in Defendant Hawk's personnel file or otherwise which would give rise to a claim that the municipality failed to properly supervise, train or discipline Defendant Hawk for any conduct while an officer for the municipality.  Also, as part of that exchange with defense counsel, the Plaintiff is given to understand that there is no evidence of past conduct by Defendant Hawk which would have alerted the municipal defendant that it would be required to engage in additional training or supervision of Defendant Hawk.  In short, proving *Monell* liability against the Defendant Township would present a challenge.

15.     At the time of his death, Mr. Vinyard had three children, who are the sole heirs of his estate.  Two sons, Kenneth Vinyard and Christopher Vinyard are adults.  One daughter, Crimson, is a minor, age 13, and lives with her mother, who was divorced from Mr. Vinyard for a considerable period of time prior to his death.

16.     The Plaintiff has engaged the services of Esther Rodgers ("Rodgers"), Esquire, and the firm of Anderson & Labovitz, to assist her in fulfilling her obligations as administrator of the Vinyard estate.  To that end, Attorney Rodgers has caused the estate to be created, and a

checking account has been opened for that purpose. Attorney Rodgers has advised the Plaintiff that the net settlement proceeds will be equally divided between Mr. Vinyard's three children.

17.     The Plaintiff has identified the outstanding obligations which Mr. Vinyard had at the time of his death that the estate will pay before distribution of the net settlement proceeds to the heirs. Those obligations total approximately Ninety Three Thousand Eight Hundred Sixty Five ($93,865.82) Dollars and Eighty Two Cents, leaving a net amount to be distributed of approximately Eight Hundred Fifty Six Thousand One Hundred Thirty Four ($856,134.18) Dollars and Eighteen Cents. The net distribution to Mr. Vinyard's minor daughter will therefore be approximately Two Hundred Eighty Five Thousand Three Hundred Seventy Five ($285,375.21) Dollars and Twenty One Cents (before counsel fees), of which approximately One Hundred Fourteen Thousand One Hundred Fifty ($114,150.08) Dollars and Eight Cents will be allocated to the wrongful death action, and approximately One Hundred Seventy One Thousand Eighty ($171,080.51) Dollars and Fifty One Cents will be allocated to the survival action in the event that the Court accepts the allocation proposed herein.  A schedule of those expenses is attached hereto as Exhibit "B."

18.     As part of his representation of the Plaintiff here, and his representation of Ms. Beatty in her action, undersigned counsel prepared a Power of Attorney and Contingent Fee Agreement for each case, which agreements were executed by Ms. Little and Ms. Beatty respectively. Copies of those agreements are attached hereto as Exhibits "C" and "D."  As evidenced by Exhibits C and D, undersigned counsel is to be paid a contingency of Forty (40 %) Percent of the gross amount received in this matter.  Therefore, if the Court approves counsel's contingency fee, the total fees paid to counsel will be Three Hundred Eighty Thousand ($380,000) Dollars.  The total

distributed to the minor heir after counsel fees will be approximately One Hundred Seventy One Thousand Two Hundred Twenty Five ($171,225.13) Dollars and Thirteen Cents.

19.     Counsel justifies this request for counsel fees by representing to the Court that counsel's firm has expended approximately one hundred (100) hours of time in the prosecution of this civil case.  Counsel's activities include:

A.      Multiple meetings with Plaintiff;

B.      More than thirty (30) telephone conferences with Plaintiff;

C.      Multiple telephone conferences with both defense counsel, state and local prosecutors, police investigators and estate counsel;

D.      More than One Hundred (100) emails to and/or from the Plaintiff, defense counsel, and related parties;

E.      Research related to various legal issues including elements of the various causes of action, mandamus procedures, etc.

F.      Research regarding the economic condition of the Defendant Township;

G.      Research regarding Defendant Hawk;

H.      Drafting and multiple revisions of the Complaint in this action;

I.      Drafting and serving of subpoenas for the various pieces of video evidence of the incident, as well as research and drafting of a brief in response to Defendants' motion to quash subpoenas issued in the case:[4]

J.      A court appearance in Beaver County related to the subpoena issues described above:[5]

K.      Extensive negotiations with defense counsel related to the drafting and approval of a confidentiality agreement related to the aforementioned video evidence;

---

[4] Counsel issued subpoenas in the state case filed on behalf of Ms. Beatty, however, the video footage obtained as a result of these efforts inured to the benefit of the Plaintiff in this case.

[5] *See* Footnote 4 supra.

L.      Meeting with various witnesses in Beaver County, and the taking of notarized statements from those witnesses;

M.      Multiple meetings with Dr. Cyril Wecht, who was engaged to perform an independent autopsy of Mr. Vinyard, and review of Dr. Wecht's report;

N.      Multiple conferences with defense counsel to engage in informal discovery, and review of informal discovery responses from defense counsel;

O.      Extensive interaction with members of the press, including two press conferences;

P.      Preparation of a mediation settlement packet, and participation in the mediation of this matter;

Q.      Extensive interaction with defense counsel related to the settlement agreement in this matter, as well as review of the proposed agreement and multiple discussions with Plaintiff regarding that agreement; and

R.      Research for, and preparation of the within petition.

20.      Plaintiff's counsel has expended Six Thousand Six Hundred Fifty Five ($6,655) Dollars in out-of-pocket expenses in this matter for which counsel seeks reimbursement. These expenditures are:

A.      Four Hundred ($400) Dollars for the filing fee in this Court;

B.      Six Thousand Two Hundred Fifty Five ($6,255) fee for the autopsy report prepared by Dr. Wecht.

21.      The Plaintiff wishes to alert the Court to a concern that she has with respect to that portion of the settlement funds which, with the Court's approval, will be designated as wrongful death damages.  As to that portion of the settlement, after counsel fees, the Plaintiff has articulable reasons to be concerned about the disposition of the funds designated to be awarded to Mr. Vinyard's minor child.  As a result, the Plaintiff asks this Court to appoint her as custodian in her capacity as Administrator of the Estate of Kenneth Vinyard for all of the funds designated as wrongful death damages until such time as the Orphan's Court division of the Common Pleas Court of Beaver County has the opportunity to adjudicate the various rights of

the beneficiaries of this money at which time said Court will direct distribution of the wrongful death proceeds in addition to the survival action proceeds.  Counsel has consulted with estate counsel, Ms. Rodgers, who indicates that, once this Court has approved the settlement, she will take all steps necessary to schedule the appropriate actions in that Court to resolve this issue.  In the meantime, those funds (i.e. approximately Sixty Eight Thousand Four Hundred Ninety ($68,490.05) Dollars and Five Cents) can be held in the estate account that has been previously opened, or in counsel's IOLTA account until such time as the state Court enters an order directing proper disposition of those funds. [6]

22.     For all of the reasons set forth above, the Plaintiff believes that the settlement described herein, with the disposition of funds as indicated, is in the best interest of Mr. Vinyard's estate, and the beneficiaries of that estate, including the minor child.  The alternative, trial by jury, would result in long delays, massive discovery, and an uncertain result.  Coupled with these facts is the serious risk that any recovery by trial may result in little to no recovery by the Plaintiff, particularly if Defendant Hawk is charged with homicide, which charge results in either a guilty plea, or a finding of guilt by a jury.  Taking into account all of the circumstances of this case, the Plaintiff respectfully represents to the Court that this result is fair and reasonable.

23.     Defense counsel, Scott Dunlop, Esquire, and Jordan Shuber, Esquire, do not oppose this motion.  By consenting to this Petition and requested relief, Defendant Center Township, through counsel, Scott Dunlop, Esquire, and Defendant Hawk, through counsel, Jordan Shuber, Esquire, specifically deny any wrongdoing and do not waive, or admit, and allegations contained herein.

---

[6] Counsel has discussed the disposition of these funds with estate counsel, Ms. Rodgers, who indicates her intention to have all funds designated for the minor beneficiary (i.e. both wrongful death and survival recovery) placed into a trust established by a reputable trust firm.

WHEREFORE, for all of the above reasons, the Plaintiff, DEBORAH LITTLE,

ADMINISTRATOR OF THE ESTATE OF KENNETH VINYARD, respectfully requests this

Honorable Court enter an order approving the allocation of the settlement funds in this matter as

described above, and to approve this settlement, including the total amount of the settlement, the

payment of requested counsel fees and costs from these funds, and the other actions described

above.

                           Respectfully submitted,

                           LAW OFFICES OF JOEL SANSONE

                           s/ Joel S. Sansone
                           Joel S. Sansone, Esquire
                           PA ID No. 41008
                           Massimo A. Terzigni,
                           Esquire
                           PA ID No. 317165
                           Elizabeth A. Tuttle, Esquire
                           PA ID No. 322888
                           *Counsel for Plaintiff*

                           Law Offices of Joel Sansone
                           Two Gateway Center, Suite 1290
                           603 Stanwix Street
                           Pittsburgh, Pennsylvania 15222
                           412.281.9194

Dated: April 26, 2023

10